IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


HAROLD DEJESUS and           :      CIVIL ACTION
MARIA T. DEJESUS             :
                             :
          v.                 :
                             :
KNIGHT INDUSTRIES            :
& ASSOCIATES, INC.           :      NO. 10-07434


MEMORANDUM

McLaughlin, J.                              July 24, 2013


     Harold DeJesus ("DeJesus") and his wife, Maria DeJesus,

bring this civil action against Knight Industries & Associates,

Inc. ("Knight").  DeJesus is a former employee of a Harley

Davidson factory who was injured when a lift table manufactured

by Knight knocked over a chain rack onto his leg.  He claims

that the lift table was defectively designed, and brings this

suit under both strict products liability and negligence causes

of action.  Ms. DeJesus brings a claim of loss of consortium.

The defendant has moved to exclude the testimony of the

plaintiffs' sole expert witness under Fed. R. Evid. 702 and for

summary judgment.  The Court will grant both motions.

I.  The Summary Judgment Record

    A.  The Accident

DeJesus was employed at a Harley Davidson factory in York,
PA.  He was a tool and die maker whose main responsibility was
to repair fixtures that held motorcycle parts in place as the
parts were manufactured.  Ex. 1 to Defendant's Motion for
Summary Judgment, Transcript of Deposition of Harold DeJesus
("DeJesus Dep.") 51:1-52:8.

On the night of December 3, 2008, DeJesus was assigned to
work in the area of the factory where heat shields were
manufactured.  Towards the end of DeJesus' shift, a coworker
named Joey Gonzalez asked DeJesus to inspect a fixture in a
different area of the factory, referred to as the assembly line
area.  Id. 66:18-21, 66:24-68:2.  During this conversation,
DeJesus was standing with his back towards a nearby chain rack.
Id. 86:14-24; Ex. 2 to Defendant's Motion for Summary Judgment,
Transcript of Deposition of James Walker ("Walker Dep.") 25:19-
26:14.

The chain rack was a cart on which several motorcycle
chains hung.  The cart had wheels, and was considered by some
Harley employees to be unstable and top-heavy.  At the time of
the accident, it was being used by a Harley employee named Jody
Black ("Black").  Ex. 13 to Defendant's Motion for Summary

Judgment, Statement of Jody Black, 1/04/12 ("Black Statement") 6:5-6, 13:10-21; Walker Dep. 47:14-22.

Black was responsible for wrapping each motorcycle chain around a clutch, another part of the motorcycle. The clutches were themselves wrapped in plastic and cardboard, and were stacked on a lift table. Ex. 3 to Defendant's Motion for Summary Judgment, Transcript of Deposition of Jody Black ("Black Dep.") 16:5-15, 19:14-21, 62:20-63:5.

Black had placed the chain rack next to the lift table so that she did not have to carry the heavy motorcycle chains a long way. The clutches were placed on the lift table so that Black did not have to bend over each time she retrieved a new clutch. The lift table allowed her to position the clutches at her desired height, about waist high. Black Statement 7:12-22; Black Dep. 31:10-13; Black Statement 10:23-28.

Black was aware that DeJesus was standing near the chain rack. Nonetheless, she stepped on the foot pedal of the lift table in order to raise it. As Black elevated the lift table, a piece of the cardboard that was wrapped around a clutch contacted the chain rack. This caused the chain rack to fall onto the leg of DeJesus. Black Dep. 32:5-13, 31:10-13, 30:15-31:6, 35:23-36:6.

DeJesus experienced such intense pain that he lost consciousness. He was taken to the hospital, where a metal rod

was inserted into his leg and skin grafts were taken from his thigh to mend the wound in his lower leg. He remained in the hospital for 19 days, where he continued to experience intense pain. DeJesus Dep. 94:19-95:16, 99:13-22, 101:14-21.

After returning home, DeJesus went to rehab for six months. He still cannot walk for more than ten minutes at a time, and he never returned to work. After exhibiting symptoms of PTSD stemming from the accident, DeJesus began seeing a psychologist. A doctor told him he may experience pain for the rest of his life. DeJesus Dep. 106:10-12, 126:6-8, 127:6-7, 134:3-14, 128:4-10.

      B.   <u>The Lift Table</u>

The lift table in question was manufactured by Knight. It was the only lift table in the assembly line area of the Harley Davidson factory at the time of the incident. The lift table did not have any audio or visual signals to alert people nearby that it was in use. Ex. 8 to Defendant's Motion for Summary Judgment, Transcript of Deposition of James Zaguroli ("Zaguroli Dep.") 114:17-23, 93:1-5; Black Dep. 49:4-8.

Knight provided a manual with every lift table it sold providing instructions for the table's use. Zaguroli Dep. 79:16-21. The manual includes the following relevant safety warnings:

> No. 6.  All loads should be centered on the table top
> before lifting;
> No. 7.  Prior to operating the table, ensure that all
> personnel on or near the table are aware of its
> imminent operation and that no person will be in
> harm's way during the use of the unit;
> No. 8.  Ensure that objects are clear of the area
> beneath the table and immediately surrounding the
> perimeter of the table while it is in use.

Ex. 11 to Defendant's Motion for Summary Judgment, Owner's

Manual ("Manual"), Bates Stamp p. 55.  Black had not read the

manual before using the lift table.  Black Dep. 35:12-14.

At the time of their shipment, Knight placed warning

stickers on the surface of every lift table that was purchased.

One of those stickers read, "To avoid bodily injury, stand clear

while lift table is moving."  Black did not notice any stickers

on the lift table before she began using it.  Zaguroli Dep.

79:22-80:6; Ex. 12 to Defendant's Motion for Summary Judgment,

Warning Stickers, Bates Stamp p. 71; Black Dep. 35:15-19.


C.    The Plaintiffs' Expert Report

The plaintiffs have offered as expert testimony the report

of Dr. Kevin Rider.  In preparing his report, Dr. Rider

inspected a Knight lift table on February 22, 2012, at a factory

owned by a company named Syncreon. [1]  Exhibit 1 to Defendant's

---

[1] Harley Davidson sold its lift tables to Syncreon at some point
after DeJesus' injury.  There were at least three lift tables in
the Syncreon factory at the time of Dr. Rider's inspection. Dr.
Rider believes that the lift table he inspected was the same as

Motion to Exclude Testimony, Transcript of Deposition of Dr. Kevin Rider ("Rider Dep.") 37:24-38:1.

Based on his inspection, his review of the record, and his own expertise, Dr. Rider concluded that the lift table that injured DeJesus was defectively designed. Rider Report, pp. 1-2, 11. In explaining what led him to this conclusion, Dr. Rider describes a three-step safety hierarchy which he claims is well-established in the industry. The hierarchy encourages manufacturers to design safe products, first by eliminating any hazards associated with the product by designing them out of the product, second by guarding against the hazards using safety guards or devices, and third by warning users to be aware of the hazards. Rider Report, p. 5.

Dr. Rider claims that Knight did not follow this hierarchy because it did not eliminate, guard against, or warn users of the fact that a lift table can cause other objects to fall through its movement. He further claims that because Knight did not follow this hierarchy, the lift table it manufactured was defective. Rider Report, pp. 5, 8.

---

the table that injured DeJesus, based on similarities between the lift table he inspected and pictures taken of the lift table shortly after the accident. Ex. 18 to Defendant's Motion for Summary Judgment, Transcript of Deposition of Scott Carlson 9:16-10:3; Rider Dep. 38:7-12, 43:23-44:4.

According to Dr. Rider, Knight should have provided a audio or visual warning prior to the lift table's movement to alert nearby personnel of its operation. He believes that had Knight included such warnings, DeJesus would have been able to back away from the table and would not have been injured when the chain rack fell over. Dr. Rider draws a comparison between lift tables and baggage conveyors at airports, which do include such audio and visual signals as a safety precaution. Rider Report, pp. 6-7.

Dr. Rider further argues that the lift table should have had warning stickers affixed to its surface. The lift table that Dr. Rider inspected did not have any warning stickers, and from this fact he concludes that the lift table that injured DeJesus did not have any warning stickers. Dr. Rider believes that Knight should have included such stickers to warn users of the potential hazard of a load overhanging the edge of the table. He claims that if Knight had provided a warning sticker, DeJesus would not have been injured. Rider Report pp. 8-10.

In sum, Dr. Rider's expert opinion is that the lift table was defectively designed because it did not include audio or visual warnings and did not have any warning stickers to alert users of potential hazards. He further concludes that if not for these defects, DeJesus would not have been injured. Rider Report p. 11.

II. <u>Analysis</u>

    A.   <u>Motion to Exclude Dr. Rider's Testimony</u>

The defendant seeks to exclude the opinion of the plaintiffs' expert witness, Dr. Kevin Rider, under the requirements of Fed. R. Evid. 702 and the Supreme Court's holding in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u> 509 U.S. 579 (1993). In the Third Circuit, courts must examine three factors in determining whether to exclude an expert opinion: 1) the expert's qualifications, 2) the reliability of the expert's methodology, and 3) the "fit" of the proposed testimony to the issues in the case. <u>In re Paoli R.R. Yard PCB Litig.</u>, 35 F.3d 717, 741-43 (3d Cir. 1994). The defendant argues that Dr. Rider's report fails to satisfy all three of these factors.

    1.   <u>Dr. Rider's Qualifications</u>

The Third Circuit has instructed courts to interpret the qualification requirement of Rule 702 "liberally", holding that a "broad range of knowledge, skills, and training qualify an expert as such." <u>Id.</u> at 741. In this vein, the Third Circuit has "eschewed imposing overly rigorous requirements of expertise and [has] been satisfied with more generalized qualifications." <u>Id.</u>

Given this liberal standard, the Court finds that Dr. Rider is sufficiently qualified to offer testimony in this case.  Dr. Rider has a B.S. and an M.S. in industrial engineering from the University of Tennessee, and a Ph.D. in industrial and operations engineering from the University of Michigan with a focus on human factors/ergonomics.  Ex. A to Plaintiffs' Sur-Reply to Motion to Exclude Testimony, Dr. Rider's CV.  The defendant contests Dr. Rider's qualifications because his expertise does not extend to lift tables or design defects.  However, Dr. Rider is a certified professional engineer who has conducted research on how individuals respond to auditory signals and how they perform while operating vehicles.  Rider Dep. 21:3-5, 23:4-8, 25:18-23.  Such expertise is relevant to the facts of this case, and thus Dr. Rider has sufficient qualifications to offer testimony in this case.

### 2. Reliability of Dr. Rider's Testimony

An expert opinion is reliable if it is based on "methods and procedures of science" rather than on "subjective belief or unsupported speculation."  Daubert, 509 U.S. at 590.  Courts may examine several factors in determining reliability, including whether the expert's methodology is subject to peer review, the frequency by which the methodology leads to erroneous results, whether it is generally accepted, and the existence of standards

controlling the technique's operation, among other factors.
See, e.g., Paoli at 742.

Based on the record before the Court of Dr. Rider's report
and his deposition testimony, his expert opinion can be divided
into three separate conclusions: 1) if the lift table included
audio or visual warnings, DeJesus would not have been injured;
2) the lift table was defectively designed because it did not
include audio or visual warnings; and 3) if the lift table
included warning stickers alerting users to the hazards
associated with lift tables, DeJesus would not have been
injured.

The Court finds that Dr. Rider's conclusions are not based
on a reliable methodology, and are therefore inadmissible
evidence.  Dr. Rider provides no scientific basis to support his
conclusion that visual warnings would have prevented DeJesus'
injury.  The record shows that DeJesus' back was towards the
lift table, so that he would not have seen a flashing light.
DeJesus Dep. 86:14-24.  In his deposition, Dr. Rider testified
that "there are a number of reflecting surfaces on here that
people can localize origins of light ... fairly quickly."  Rider
Dep. 95:18-21.  But the record provides no indication that there
were reflective surfaces around the lift table, or that DeJesus
would have seen a flashing light even if there were.  There is

no evidence, other than Dr. Rider's assertion, that a visual warning would have prevented DeJesus' injury.

Similarly, the only evidence Dr. Rider provides in support of his conclusion that an audio warning would have prevented DeJesus' injury is his assertion that "an expected human behavior is that people expect to turn and face auditory signals in order to corroborate and/or reinforce reception." Rider Report p. 6. He cites to the "Human Factors Design Handbook" to support this assertion, but it is unclear from his report and his deposition how this source provides support.

Regardless, Dr. Rider's assertion and citation to an academic source do not constitute a reliable methodology. Dr. Rider did not attempt to test whether or not an audio signal would have prevented DeJesus' injury. He did not try to replicate the environment in the factory at the time. He does not point to statistics on similar devices that include warning signals.[2] Dr. Rider's conclusion does not rest on a scientific method or procedure, but rather on exactly the type of unsupported speculation that <u>Daubert</u> requires courts to disregard.

---

[2] The Court considers Dr. Rider's analogy to a baggage claim conveyor belt to be unpersuasive. The conditions in an airport are vastly different from those in a Harley Davidson factory. Moreover, a conveyor belt begins operating automatically and covers a much larger area than a lift table.

The second conclusion Dr. Rider makes is that because the lift table did not include audio or visual warnings, it was defectively designed. In support of this conclusion he points to a three step safety hierarchy that manufacturers can follow in order to design safe products, first by eliminating hazards associated with a product, second by guarding against such hazards, and third by warning users to be aware of such hazards.

Dr. Rider argues that because a known hazard of lift tables is that they may make contact with surrounding objects while in motion, and because Knight Industries did not eliminate, guard against, or warn users of that hazard, its lift table was defectively designed. However, it is unclear how the three step safety hierarchy leads Dr. Rider to the conclusion that the lift table was defectively designed. The hierarchy describes a method that manufacturers can use to make their products safer. Dr. Rider provides no evidence that manufacturers who do not follow this hierarchy have necessarily designed a defective product. Instead, he merely asserts that because the lift table did not have audio or visual warnings, it was defective. Again, this is the type of unsupported speculation that should be excluded under Daubert.

Finally, Dr. Rider concluded that if the lift table included warning stickers alerting users to the hazards associated with lift tables, DeJesus would not have been

injured.  The record shows that Knight placed a warning sticker on every lift table before they shipped it.  Zaguroli Dep. 79:22-80:6.  The only evidence supporting Dr. Rider's assertion that the lift table involved in the accident did not have warning stickers is that the lift table he inspected in 2012 did not have any warning stickers.

However, there is no evidence that the lift table inspected by Dr. Rider is the same as the one involved in DeJesus' accident.[3]  And even if it was the same table, Dr. Rider did not inspect it until over three years after the accident.  He has no way of knowing whether or not the stickers were present on the table at the time of the accident, and thus has no basis to conclude that the lack of warning stickers contributed to DeJesus' injury.

Dr. Rider further contends that DeJesus would not have been injured if the lift table contained a warning sticker regarding the danger of a load overhanging the edge of the lift table. Rider Report, p. 10.  It is undisputed that a sticker warning against this particular hazard was not included on the lift table.  Zaguroli Dep. 79:22-80:6.  However, there is no evidence

_____

[3] The plaintiffs point to similarities between pictures taken of the lift table shortly after the accident and pictures taken by Dr. Rider during his inspection as evidence that they are the same table.  But the similarities are, at best, inconclusive, and cannot support a finding that the tables are the same.

in the record that there actually was a load overhanging the lift table.

Dr. Rider points to the fact that the cardboard wrapped around the clutches made contact with the chain rack, indicating that the cardboard was hanging off the edge of the table. However, in his deposition he was asked if it was possible that the chain rack was in fact overhanging the lift table. He replied, "I don't have an answer to that." Rider Dep. 56:13-15. This response underscores the fact that Dr. Rider did not employ a reliable methodology in coming to his conclusions. He relied only on his own speculation as to what happened at the time of the accident, and what would have happened if the lift table had audio or visual warnings or warning stickers. The Court finds that Dr. Rider did not use a reliable methodology in forming his expert opinion, as required by Daubert. Thus, his proposed testimony should be excluded.

### 3.    "Fit" of Dr. Rider's Testimony

Because the Court finds that Dr. Rider's opinion does not employ a reliable methodology, it does not need to proceed to the analysis of his testimony's "fit". Nonetheless, the Court notes that a "fit" analysis would likely lead to the exclusion of Dr. Rider's testimony as well. An expert's proposed testimony must "fit" the issues of a case. Paoli at 742-743.

Whether the lift table is defectively designed depends on an analysis of the factors listed in the Restatement (Third) of Torts. As will be discussed in greater detail below, Dr. Rider's testimony does not discuss, or even implicate, these factors.

Ultimately, though, the Court does not need to proceed beyond the reliability analysis. The Court grants the defendant's motion to exclude Dr. Rider's testimony.

B.    Motion for Summary Judgment

The defendant has also moved for summary judgment under Fed. R. Civ. P. 56(a). Pursuant to Rule 56, the Court "shall grant summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue is genuine if the evidence is such that a reasonable jury could find for the non-moving party; it is material if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Knight moves for summary judgment on plaintiffs' design defect, failure to warn, negligence, and loss of consortium claims. The Court will address them in turn.

1. <u>Design Defect</u>

The Restatement (Third) of Torts[4] states that a product "is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller ... and the omission of the alternative design renders the product not reasonably safe." Restatement (Third) of Torts §2(b). The plaintiffs argue that a lift table including audible or visual warnings is a reasonable alternative design to the one sold by Knight, and that the omission of such warnings rendered the lift table not reasonably safe.

The Court finds that the plaintiffs have produced no evidence from which a reasonable jury could find that audio or visual warnings constitute a reasonable alternative design. The plaintiffs' argument relies on two main points. First, Knight concedes that it could have included audio or visual warnings if a customer requested them. Zaguroli Dep. 92:20-24. And second, a competitor of Knight's offered a lift table that included audio or visual warnings as a customer option. Exhibit L to

---

[4] The Third Circuit has instructed federal district courts to apply the Restatement (Third) to design defect claims arising under Pennsylvania law. <u>Covell v. Bell Sports, Inc.</u>, 651 F.3d 357, 360 (3d Cir. 2011). In the wake of <u>Covell</u>, this Court determined in <u>Kordek v. Becton, Dickinson and Company</u> that without further guidance from the Pennsylvania Supreme Court, it must follow the Third Circuit's direction. No. 10-7040, 2013 WL 420332, at *6 (E.D. Pa. Feb. 4, 2013).

Plaintiffs' Sur-Reply to the Motion for Summary Judgment, Zaguroli Deposition Exhibit 4. Therefore, argue the plaintiffs, audio and visual warnings constitute a reasonable alternative design.

However, this argument conflates feasibility with reasonableness. The defendant does not dispute that it is feasible to design a lift table with audio and visual warnings. But just because such warnings are feasible does not mean they are a reasonable alternative design. That determination can only be made by analyzing the factors listed in the Restatement (Third).

Under the Restatement (Third), courts may consider a variety of factors in determining whether an alternative design is reasonable and whether the omission of this design renders the product unreasonably safe. Such factors include "the magnitude and probability of the foreseeable risks of harm, the instructions and warnings accompanying the product, and the nature and strength of consumer expectations regarding the product … [and the] relative advantages and disadvantages of the product as designed and as it alternatively could have been designed." Id. at cmt. f.

The plaintiffs have not provided any evidence that relates to the Restatement (Third) factors. There is no evidence that the risk of harm posed by the lift table as currently designed

is high.  The record shows just the opposite - Knight has sold
between 8,000 and 10,000 lift tables, and has never encountered
this problem before.  Zaguroli Dep. 139:17-20, 102:10-13.

Likewise, there is no evidence that the instructions and
warnings accompanying the lift table were inadequate.  In fact,
the owner's manual Knight provided with the lift table warned
users to "ensure that all personnel on or near the table are
aware of its imminent operation and that no person will be in
harm's way during the use of the unit." Manual, Bates Stamp p.
55.

There is no evidence that consumers expect lift tables to
have audio or visual warnings.  Crucially, the only company that
offers such warnings with its lift tables does so only as a
customer option.  And lastly, there is no evidence showing the
comparative advantages of lift tables with audio or visual
warnings, such as an examination of cost-effectiveness or
statistics showing that lift tables with such warnings have less
frequent accidents.

Just as importantly, the plaintiffs have not provided any
evidence that the omission of audio or visual warnings rendered
the lift table not reasonably safe.  The plaintiffs contend that
DeJesus would not have been injured if the lift table included
their proposed audio or visual warnings. But a product is not
unreasonably dangerous simply because it could be safer.  See,

e.g., Sansom v. Crown Equipment Corp., 880 F. Supp. 2d 648, 657 (W.D. Pa. 2012) ("A plaintiff cannot prevail in imposing strict liability on the distributor if the proposed design makes an already safe product slightly safer").  It is true that Knight's lift table can knock things over when it is raised.  But the same could be said of many products.  That these products do not include warning signals when they are in operation does not make them unreasonably dangerous.

The Court notes that even if Dr. Rider's report had been admitted, the plaintiffs still would not have any evidence to support their design defect claim.  Dr. Rider's analysis did not speak to any of the Restatement (Third) factors.  He concluded that the lift table was defective on wholly different grounds.  But a jury can only apply facts to the governing law, not to a different standard outlined by an expert.  As such, Dr. Rider's opinion could not lead a reasonable jury to find for the plaintiffs.

Because the plaintiffs have provided no evidence that the lift table's design was defective under the Restatement (Third), the Court finds that no reasonable jury could find that the lift table was defectively designed.  The Court grants the defendant's motion for summary judgment as to this claim.

## 2. Failure to Warn

A product is "defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller ... and the omission of the instructions or warnings renders the product not reasonably safe."  Restatement (Third) of Torts §2(c).  Courts should apply a reasonableness test for judging the adequacy of product instructions and warnings.  Id. at cmt. i.

The Court finds that no reasonable jury could find that that Knight's lift table was defective because of inadequate instructions or warnings.  Knight provided an owner's manual with every lift table it sold that specifically warned users not to operate the table with people nearby.  In addition, all Knight lift tables were delivered with a warning sticker informing users to clear the area around the lift table before operating it.

The plaintiffs contend the table involved in DeJesus' accident did not have this warning sticker.  However, the only evidence supporting that contention is that the lift table Dr. Rider inspected in 2012 did not have any warning stickers.  As discussed above, there is no conclusive evidence that these were the same table, and even if they were, Dr. Rider did not inspect the table until three years after the accident.  There is no way

20

to know whether or not the lift table had warning stickers on the night of DeJesus' injury.

The plaintiffs also argue that the lift table should have had a warning sticker informing users of the danger of a load overhanging the edge of the lift table. A sticker warning against this particular hazard was not included on the lift table. However, there is no evidence in the record that there actually was a load overhanging the lift table. Quite obviously, a warning cannot reduce or avoid a risk that never materializes. <u>See, e.g.</u>, <u>Hartsock v. Wal-Mart Stores East, Inc.</u>, No. 07-3200, 2009 WL 4268453, at *1 (E.D. Pa. Nov. 23, 2009) (holding that a plaintiff must provide evidence demonstrating that the defendant's failure to warn caused the plaintiff's injuries).

Because the plaintiffs have provided no evidence that the lift table did not include adequate warnings, the Court holds that no reasonable jury could find that the lift table was defective due to inadequate instructions or warnings. The Court grants defendant's motion for summary judgment as to this claim.

### 3.  Negligence

Under Pennsylvania law, a negligence claim must demonstrate each of the following factors: 1) a duty or obligation recognized by the law, requiring the actor to conform to a

certain standard of conduct; 2) a failure to conform to the standard required; 3) a causal connection between the conduct and the resulting injury, and 4) actual loss or damage resulting to the interests of another. <u>Morena v. S. Hills Health Sys.</u>, 501 Pa. 634, 642 n.5 (1983).

The plaintiffs argue that Knight breached its duty of care by manufacturing a defective product. Of course, this argument rests on the assumption that the lift table was defective. As stated earlier, the lift table is not defective under the Restatement (Third). The Court finds that no reasonable jury could find that Knight breached its duty of care by manufacturing a reasonably safe product. The Court grants the defendant's motion for summary judgment as to this claim.

### 4. <u>Loss of Consortium</u>

In Pennsylvania, loss of consortium claims are derivative. <u>Darr Constr. Co. v. Workmen's Comp. Appeal Bd.</u>, 715 A.2d 1075, 1080 (Pa. 1998). Because the Court grants defendant's motion for summary judgment as to the principal claims, it also grants the defendant's motion for summary judgment as to the loss of consortium claim.

An appropriate order shall issue separately.